# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### NORTHERN DIVISION

WILLIE WEBB                                                                    PLAINTIFF


v.                              NO. 1:11CV00007 HDY


MICHAEL J. ASTRUE,                                                  DEFENDANT
Commissioner of the Social
Security Administration


### MEMORANDUM OPINION AND ORDER

BACKGROUND. In June of 2008, plaintiff Willie Webb ("Webb") commenced the
administrative portion of this case by filing applications for disability insurance benefits
and supplemental security income benefits pursuant to the provisions of the Social
Security Act ("Act"). His applications were denied initially and upon reconsideration,
after which he requested, and received, a de novo hearing before an Administrative Law
Judge ("ALJ"). In May of 2010, the ALJ issued a decision adverse to Webb, and he
appealed. The Appeals Council denied his request for review, and the ALJ's decision
became the final decision of the Commissioner of the Social Security Administration
("Commissioner"). Webb then commenced the judicial portion of this case by filing a
complaint pursuant to 42 U.S.C. 405(g). In the complaint, he challenged the
Commissioner's final decision.

STANDARD OF REVIEW. The sole inquiry for the Court is to determine whether the ALJ's findings are supported by substantial evidence on the record as a whole. It requires a more scrutinizing analysis than mere substantial evidence. See Heino v. Astrue, 578 F.3d 873 (8th Cir. 2009). The appropriate standard of review requires the Court to consider the weight of the evidence in the record and apply a balancing test to evidence which is contrary. See Id.

THE ALJ'S FINDINGS. The ALJ made findings pursuant to the five step sequential evaluation process. At step one, he found that Webb has not engaged in substantial gainful activity since July 31, 2007, the alleged onset date. In making that finding, the ALJ noted the following:

> Vocational documentation indicates that the claimant had worked as a cement finisher from 1974 until December 2006 and as a security guard from January 2000 until December 2006.
>
> However, the claimant reported that he had quit working on July 31, 2007. Specifically, he stated that he had been "laid off" from this job because the company where he worked went out of business. In addition, the claimant testified at the hearing that he had worked as a security guard for five or six months after July 31, 2007. He also testified that he "got bumped" from this job …
>
> The claimant's certified earnings record indicates that the claimant had earned gross wages in the amount of $3,993.89 during 2007 …
>
> Based on this evidence, the undersigned resolves doubts in the claimant's favor and finds that his gross income after July 31, 2007, did not rise to the level of substantial gainful activity. However, this evidence shows that the claimant was able to perform at least light work after his alleged onset date of disability.

-2-

<u>See</u> Transcript at 14-15. At step two, the ALJ found that Webb has the following severe impairments: "blindness of his left eye, a torn rotator cuff of his left upper extremity, and a history of a fracture of the long finger on his right hand …" <u>See</u> Transcript at 15. The ALJ also considered, but discounted, the severity of Webb's hernia, sun sensitivity, and headaches caused by his alleged sun sensitivity. At step three, the ALJ found that Webb does not have an impairment or combination of impairments listed in, or medically equal to one listed in, the governing regulations. The ALJ then assessed Webb's residual functional capacity and found that he can perform "a maximum of light work … except he has limited vision in one eye and good vision in the other eye (or, monocular vision); he has lost 25% of his grip strength and fine motor strength in his dominant right hand; and he has good use of his left hand." <u>See</u> Transcript at 16. The ALJ additionally found that Webb has no significant non-exertional impairments. At step four, the ALJ found that Webb is capable of performing his past relevant work as a security guard/gatekeeper. Accordingly, the ALJ found that Webb was not under a disability as defined by the Act at any time from July 31, 2007, through the date of the decision.

WEBB'S ASSERTIONS OF ERROR. Are the ALJ's findings supported by substantial evidence on the record as a whole? Webb thinks not and advances the following reasons why: (1) he met or equaled Listing 1.02B(2)(b)(c), (2) his subjective complaints of pain were not properly considered, (3) his residual functional capacity was not properly assessed, (4) he cannot return to his past relevant work, and (5) the ALJ failed to fully develop the record.

STEP THREE ANALYSIS. Webb first maintains that the ALJ erred at step three because Webb meets or equals Listing 1.02B(2)(b)(c).[1] In support of his assertion, he maintains that he is unable to perform fine and gross movements in each of his upper extremities. He appears to so maintain because of the problems he has experienced with his left shoulder and right hand and fingers.

At step three, the ALJ must determine whether a claimant's impairments, when considered individually and in combination, meet or equal a listed impairment. See Raney v. Barnhart, 396 F.3d 1007 (8th Cir. 2005). In order to meet a listed impairment, the claimant's impairment must "meet all of the specified medical criteria." See Marciniak v. Shalala, 49 F.3d 1350, 1353 (8th Cir. 1995) [emphasis in original] [quoting Sullivan v. Zebley, 493 U.S. 521, 530 (1990)]. In order to equal a listed impairment, the claimant's must "present medical findings equal in severity to all the criteria for the one most similar listed impairment." See Id. [emphasis in original] [quoting Sullivan v. Zebley, 493 U.S. at 531]. The determination at step three is strictly a medical determination. See Cockerham v. Sullivan, 895 F.2d 492 (8th Cir. 1990).

---

[1]

Listing 1.02 describes major dysfunction of a joint or joints. In short, 1.02B requires the following showing:

gross anatomical deformity .... and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s) [and][i]nvolvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand) resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

See Savage v. Astrue, 2009 WL 1664625 at 4 (W.D.Mo. 2009).

At step two, the ALJ found that Webb's severe impairments include a torn rotator cuff of his left upper extremity and a history of a fracture of the long finger on his right hand. The ALJ found at step three, though, that Webb does not have an impairment or combination of impairments listed in, or medically equal to one listed in, the governing regulations. In making the finding at step three, the ALJ reviewed "sections 1.00 et seq. and 2.00 et seq. of the listed impairments." <u>See</u> Transcript at 15.

Although the ALJ's finding at step three is not extensive, substantial evidence on the record as a whole supports it. As the Court has noted, the determination at step three is strictly a medical determination. Webb has failed to offer any medical evidence whatsoever that his upper extremity impairment(s) meets all of the specified medical criteria nor has he presented medical findings equal in severity to all the criteria for the one most similar listed impairment. Instead, Webb has merely offered his own testimony, specifically, he maintains that his upper extremity impairment(s) causes him considerable pain. Although his subjective complaints of pain are certainly relevant in assessing his residual functional capacity, they are not relevant in determining whether the impairment(s) meets or equals a listed impairment.

<u>WEBB'S SUBJECTIVE COMPLAINTS OF PAIN</u>. Webb maintains that his subjective complaints of pain were not properly considered. He maintains that he experiences pain in his left eye, left shoulder, right hand and fingers, lower back, and stomach.

In evaluating a claimant's subjective complaints of pain, the ALJ is obligated to consider the following:

… in addition to objective medical evidence, any evidence relating to: a claimant's daily activities; [the] duration, frequency and intensity of pain; [the] dosage and effectiveness of medication; precipitating and aggravating factors; and functional restrictions. See Polaski v. Heckler, 739 F.2d 1320 (8th Cir.1984). Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole. Id. at 1322. … The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts. …

See Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001). The ALJ need not explicitly discuss each Polaski v. Heckler factor but "only need acknowledge and consider those factors before discounting a claimant's subjective complaints." See Eichelberger v. Barnhart, 390 F.3d 584, 590 (8th Cir. 2004).

The ALJ considered Webb's subjective complaints of pain in accordance with Polaski v. Heckler. In doing so, the ALJ considered the medical evidence, specifically, the findings made by Dr. James Simpson ("Simpson") during his June of 2008 consultative examination of Webb and the findings made by one or more physicians at the White River Medical Center. The ALJ also considered the non-medical evidence. He considered Webb's daily activities, including his representations that he walks for exercise, can sometimes clean up around the trailer park he resides in, and can carry a twenty pound grocery sack; the fact that he takes very little prescription pain medication for his shoulder pain; and stopped working at two different jobs not because of a disability but because he was laid off. Given the foregoing, the ALJ found that although Webb experiences some pain, he does not experience pain to the severity he alleged.

Substantial evidence on the record as a whole supports the ALJ's evaluation of Webb's subjective complaints of pain. The ALJ properly considered the medical evidence, which he correctly noted was sparse. It largely consists of Simpson's finding and those made by one or more physicians at the White River Medical Center. With regard to Simpson's findings, he noted the following in outlining Webb's medical history:

> 50 year old construction worker. Last worked June 2007. Injured left shoulder 1991 in auto wreck. Continues to have pain in shoulder, lifting, etc. is totally blind in left eye (childhood injury). Was once told he had rotator cuff injury but no treatment given.
>
> Is being treated for abscessed tooth today during exam.
>
> Medications: Percocet.  OTC meds.

See Transcript at 178. Simpson noted that Webb had uncorrected vision of 20/50 in his right eye and corrected vision of 20/30 in that eye. Simpson found Webb's range of motion in his upper extremities to be normal, although he had some tenderness in his left upper extremity. In all other respects, Simpson found nothing remarkable about Webb's medical condition. Simpson diagnosed Webb with a left shoulder injury, possibly a rotator cuff injury, and left eye blindness. Simpson assessed the severity of Webb's impairments as follows: "mild restriction to lift and carry; mild visual restriction." See Transcript at 182. There is nothing about Simpson's findings that contravene the ALJ's treatment of Webb's subjective complaints of pain.

With regard to the findings made by one or more physicians at the White River Medical Center, they reflect that Webb was treated for an injury to a finger on his right hand, complained of pain in his shoulder caused by a motor vehicle accident years before, and was diagnosed with an untreated hernia. See Transcript at 183-253. Otherwise, the findings are unremarkable. There is nothing about the findings that contravene the ALJ's treatment of Webb's subjective complaints of pain.

The ALJ also properly considered the non-medical evidence. The ALJ considered some of Webb's daily activities, including his representations that he walks for exercise, see Transcript at 36; can sometimes clean up around the trailer park he resides in, see Transcript at 31, 35-36; and can carry a twenty pound grocery sack, see Transcript at 36. The record reflects that he has no problem standing and walking, see Transcript at 36; lives alone and is capable of caring for his own needs, e.g., cleans, irons, cooks, washes clothes; and occasionally hunts and fishes. See Transcript at 125-130. The ALJ considered, and the record supports, that Webb largely takes non-prescription medication for his pain, see Transcript at 145, 161, 178, although he has taken Percocet for the pain in his finger. The ALJ also considered, and the record supports, that Webb stopped working at two different jobs not because of a disability but because he was laid off. Specifically, he represented that he stopped working on the alleged onset date because his employer went out of business and he was laid off, see Transcript at 119, and represented that he briefly worked as a security guard after the alleged onset date and only stopped working because his employer "ran out of contracts and [he] got bumped."

<u>See</u> Transcript at 31.

The ALJ is charged with the obligation of assessing credibility, and Webb has offered no legitimate reason for questioning the ALJ's assessment. The characterization of the evidence made by him in light of the <u>Polaski v. Heckler</u> factors is one of the acceptable characterizations. Thus, there is no error.

<u>WEBB'S RESIDUAL FUNCTIONAL CAPACITY</u>. Webb maintains that his residual functional capacity was not properly assessed. He offers little in support of his assertion, although he does maintain that "[t]he ALJ should have sought an opinion from [Webb's] treating physicians, or in the alternative, ordered consultative examinations, including psychiatric and/or psychological evaluations, to assess [his] mental and physical residual functional capacity." <u>See</u> Document 12 at 14.

Residual functional capacity is simply an assessment of "the most a person can do despite that person's limitations." <u>See</u> <u>Brown v. Barnhart</u>, 390 F.3d 535, 538-39 (8th Cir. 2004). The assessment is made using all of the relevant evidence in the record and must be supported by "medical evidence that addresses [the person's] ability to function in the workplace." <u>See</u> <u>Id</u>. at 539.

The ALJ considered the medical and non-medical evidence in assessing Webb's residual functional capacity. The ALJ found that Webb can perform light work, except that he has limited vision in one eye and has lost twenty-five percent of his grip strength and fine motor strength in his right hand. The ALJ additionally found that Webb has no

significant non-exertional impairments.

Substantial evidence on the record as a whole supports the ALJ's assessment of Webb's residual functional capacity. The ALJ considered the medical and non-medical evidence in finding that Webb can perform light work with some restrictions. He candidly admitted that he has no problems standing and walking and is capable of carrying a sack of groceries weighing up to twenty pounds, see Transcript at 36, activities that are consistent with light work. See 20 C.F.R. 404.1567(b), 20 C.F.R. 416.967(b). He nevertheless maintains that the ALJ should have obtained an opinion from Webb's treating physician or otherwise ordered a consultative examination. The Court cannot agree. Webb has not shown why the available evidence did not provide an adequate basis for determining his residual functional capacity. See Sultan v. Barnhart, 368 F.3d 857 (8th Cir. 2004) (re-contacting medical sources or ordering consultative examination required if available evidence inadequate to determine residual functional capacity).

WEBB'S PAST WORK. Webb next maintains that he cannot return to his past relevant work. He maintains that the ALJ's step four analysis was in error because he did not include all of Webb's impairments and limitations in a hypothetical question.

Before the ALJ determines that a claimant can perform his past relevant work, the ALJ must first fully investigate, and make explicit findings as to, the physical and mental demands of the work. See Sells v. Shalala, 48 F.3d 1044 (8th Cir. 1995). See also Social Security Ruling 82-62. Once the ALJ does so, he must then compare the demands of the

work with what the claimant is capable of performing. See Sells v. Shalala, supra.

The ALJ solicited the testimony of a vocational expert at step four, and he was asked, inter alia, to identify Webb's past relevant work. The vocational expert testified that Webb has past relevant work that includes work as a security guard/gatekeeper, work of a light, semi-skilled nature. The vocational expert testified that given Webb's residual functional capacity, he is capable of performing his past work as a security guard/gatekeeper. The ALJ then compared Webb's residual functional capacity with the physical and mental demands of his work as a security guard/gatekeeper and found that he is able to perform it "as generally performed." See Transcript at 19.

Substantial evidence on the record as a whole supports the ALJ's findings as to the demands of Webb's past relevant work as a security guard/gatekeeper and the ALJ's comparison of those demands with what Webb is capable of performing. The ALJ correctly identified the demands of Webb's past relevant work as the vocational expert cited the description of the work found in the Dictionary of Occupational Titles ("DOT"). The ALJ committed no error in so identifying the demands of Webb's past relevant work as the ALJ may discharge the duty to make explicit findings regarding the demands of a claimant's past work by "referring to the specific job descriptions in the [DOT] that are associated with the claimant's past work." See Sells v. Shalala, 48 F.3d at 1047. The ALJ then correctly compared the demands of Webb's past relevant work with the finding the ALJ made regarding Webb's residual functional capacity, the latter finding being

-11-

supported by substantial evidence on the record as a whole.

Webb faults the ALJ for failing to include all of Webb's impairments and limitations in a hypothetical question. There are at least two problems with his assertion. First, the testimony of a vocational expert is not required at step four.[2] Second, one of the hypothetical question posed to the vocational expert was correctly phrased as it captured the concrete consequences of Webb's impairments and limitations. See Transcript at 46.

DEVELOPING THE RECORD. Webb last maintains that the record was not fully developed. He maintains that additional examinations and/or x-rays should have been obtained of his shoulder and possible rotator cuff injury.

The ALJ has an obligation to fully develop the record. See Battles v. Shalala, 36 F.3d 43 (8th Cir. 1994). There is no bright line test for determining whether the ALJ fully developed the record; the determination is made on a case by case basis. See Id. It involves examining whether the record contains sufficient information for the ALJ to have made an informed decision. See Pratt v. Asture, 372 Fed.Appx. 681 (8th Cir. 2010). With regard to ordering a consultative examination, it is reversible error for an ALJ not to order such an examination when it is necessary to make an informed decision. See

---

[2]

The testimony of a vocational expert is only required when "the burden shifts to the [Commissioner at step five] and the claimant has a non-exertional impairment." See Johnston v. Shalala, 42 F.3d 448, 452 (8th Cir. 1994). Because in this instance the ALJ did not proceed past step four, the use of vocational expert testimony was unnecessary.

Freeman v. Apfel, 208 F.3d 687 (8th Cir. 2000).

As a preliminary matter, the Court notes that Webb never asked the ALJ to obtain additional evidence nor otherwise asserted that the record was incomplete. See Transcript at 26-48. It is also noteworthy that Webb did not ask to submit additional evidence in appealing the ALJ's adverse decision. See Transcript at 8.

Notwithstanding the foregoing, the Court has examined the record to determine whether it contains sufficient information for the ALJ to have made an informed decision. The Court is satisfied that the record is indeed sufficient. It contains a number of Webb's records, medical and otherwise, and he has not identified any record that should have been included in the record but was not. Accordingly, the Court finds that the ALJ fully developed the record.

CONCLUSION.  There is substantial evidence on the record as a whole to support the ALJ's findings. Accordingly, Webb's complaint is dismissed, all requested relief is denied, and judgment will be entered for the Commissioner.

IT IS SO ORDERED this ___13___ day of September, 2011.

_____
UNITED STATES MAGISTRATE JUDGE

.